...advisement, and in a moment move to the next place. Next case is also Capco, v. McAfee, 2017, 1989, 1990, 1991, and 1992, Mr. Wecker. We're taking eight minutes this time and then yielding two to Mr. Urio. With respect to this patent, there are two issues that are presented. The first issue is whether the preamble was limiting. The board ruled that it was non-limiting, despite the patent owner's argument that changes were made to the preamble that were intended to describe the invention. The preamble doesn't have anything in it that the body of the claim doesn't have. Isn't that right? What the preamble has that the body doesn't is... They both talk about blocking in real time harmful information, right? I guess to follow up on Judge Lurie's question, step C talks about to block in real time harmful information. Right, so the distinction between what the preamble adds is the fact that the method, the real time blocking method, consists of all three steps, A, B, and C, which are the connection request, the download, and then the blocking. When you have a process like this, where the end result is, the last step is the result that you want to get. What if the claim read a method comprising the steps of A, B, and C? Isn't that the same? So what came before is only a duplication of what is in the subsequent steps. If that's all the preamble said, then presumably it doesn't matter whether you read it as limiting or non-limiting. Here the importance of whether you read it as limiting or non-limiting is whether the real time constraint applies to steps A and B, which are the connection request and the harmful information code. Well, if I look at the specification, I see real time applying to blocking. Blocking all over, blocks in real time, blocks in real time, not to the other steps, not to connecting and transmitting. So the specification is clear that what's addressed here is an online system for blocking harmful information that is occurring in the course of surfing the web, essentially. But is there anything in the specification? You always just generally say read the whole specification. Point to us where in the specification there is a reference to real time in connection with anything other than blocking. So as an example, and I can see that the word real time is not used directly in connection with those other steps. Well, that's your whole point, though. I think what you understand from reading this is that the entire invention is a real time process invention. So, for example, on column 9, line 20 to 26, according to the present invention, the harmful information blocking code module is automatically provided to and installed in the client system by only online connecting to the harmful information management server. So that harmful information detected on the client system can be actively blocked in real time without requiring a manual installation process. So it's referring to the entire process as happening in real time so that you can block that harmful information. Isn't there a disclosure in the specification about how the user somehow manually reaches out to contact the server, the web page? So in... Column 5, column 6. Right. In the first embodiment, they're describing a system in which you're initiating service, in which you're getting the client connected with the management server. And in that case, you need to direct the system where the server is. Other embodiments don't require that. Other embodiments make it clear that you contact a server that has potentially harmful information and that the whole process is automated after that. The whole point of having this connection request and automatic download, one pass back and forth, is for the speed of it. Because you cannot wait while the user is surfing the web. They need instantaneous responses in order to not disrupt that real time process of surfing the web. The Korean file history is clear that it's directed... The invention as a whole is directed at these online threats, that hacking. And where you have hacking and the evil person is basically in the process of taking your personal information, you need to block that. Do you know of any federal circuit opinion in which this court has relied on the prosecution history of a related foreign patent to understand the claim terms of a U.S. patent? I haven't looked at that issue particularly. It was never debated before the board. In fact, McAfee's counsel first offered the Korean file history. We should run down your time and we want Mr. Yorio to get a couple of minutes. Sure. Thank you. Robert Yorio for the appellant. My remarks are addressing the motion to amend, which the board denied. During the board's final decision and the aqua products decision was not issued beyond bond. This isn't an aqua case. This is a non-aqueous case. It's not an aqua case. Aqua concerns patentability. This is a new matter. Well, I... It's a different description. I think that it does apply because the burden of persuasion was incorrectly assigned to the patent owner and not to petitioner. Even in aqua, didn't we actually distinguish the patentability issues from the threshold question of whether or not the claim adds new matter and is actually narrower than the original claim? In other words, written description, expressly said, is encompassed within this threshold inquiry. And once the burden of production is satisfied as we believe it was in the patent owner, then the ultimate issue of patentability burden shifts to the petitioner. That's aqua products. And that's what was not done in this case. So what was the initial showing that you believe the patent owner made with respect to written description? For example, with respect to... Let me give a couple of substitute claims as examples. So claim 40 and 42, substitute claims 40 and 42, addressed... I'm just going to read a little part of them. The client system connecting to the first web server over the computer network, according to information provided about the file to be executed from the second web server to the client system. The new language is about the file to be executed. And we don't believe that that is new matter. That's a clarification that the connection is about the file to be executed by the user at the time that they are on the web. That's not new matter. It's clearly supported by the specification. I have a number of references. But connecting and transmitting in real time is new matter. Well, that goes to claims 44. So 40 and 42 are about the file to be executed. And we don't think that's new matter at all. Burden is on the petitioner. And the board case needs to be remanded. 44 includes the real time for connecting and transmitting steps. So as Judge Tan mentioned, this is step A and B. And it added real time for connecting and transmitting steps. The board specifically found that because under its construction of the original claims and of the specification as a whole, that there was nothing in the spec to support the notion of blocking at any other step. So why isn't that enough? I mean, that doesn't have anything to do with the burden being put on anybody. Well, there's a disagreement with the finding of the board on that point. They overlooked key parts of the specification. They failed to consider an important aspect in the prosecution history. And when you look at the proposed amended claims, which make clear that connecting and transmitting will be in real time, there's ample support in the specification. I'll give a couple of examples. Yeah, but didn't you concede, though, before the board, that the board's claim construction would doom your proposed amendments if the board's claim construction and reading of the specification were correct? I did note that in the record, Your Honor. I think that that's not the correct takeaway. I'm aware of the back and forth at the hearing. I think that issue is, if you look at the preamble and conclude, as the board did, that it is not limiting, and you don't look at the proposed amended claims, which clarify these points that I've just mentioned, the board found that there was not adequate support. The question was, is there adequate support? You can answer the question of whether the construction about limiting or non-limiting. You could answer that adversely to the patent owner, but you still should grant the motion to amend, because the proposed claim amendments make clear that these steps, the steps connecting and transmitting, have to occur in real time. If the board already found the specification wouldn't support that, then how can that claim not be adding new matter or be narrower than the original claim? We respectfully disagree with that finding. I've mentioned they overlooked parts of the specification. They did not read the claims and the abstract and take those into account when they were looking at support in the specification. Just a couple of points about what's in the specification. Well, just one more point. You only asked for two minutes from your co-counsel. You're almost six now. One quick point. The specification, here are the references that support real time in a file to be executed. Mr. Wecker mentioned one at 9.20 to 26. Support in 2.28.37. Column 5, 40 to 52, and 62 to 65. Column 6, 6 to 9. Column 7, 32 to 38. Column 8, 38 to 42. Thank you, counsel. We'll hear from up there now. Thank you, Ron. Valentine. May it please the court. Jim Valentine from Perkins Cooley on behalf of McAfee. With me today are my colleagues, Nancy Chang and Dan Begatow. I guess I'll begin with Mr. Iorio's topic because some of the evidence there will overlap with the topic Mr. Wecker addressed. We respectfully submit that there's no awkward products issue here because the board never reached the issue of whether the prior art invalidated the proposed substitute claims. Instead, the board denied the motion to amend and found that CAP failed the threshold requirement of showing written description support for the proposed amendments. That's by statute and also 37 CFR 42.121B requires in order for an amendment to be considered that they make a threshold showing of support. And they failed to do that and that finding by the board is supported by substantial evidence. I'll go to the first amendment, which is in proposed substitute claims 36 and 34. And this is the amendment to say that the connecting must be done in real time for the file to be executed. And this does dovetail with Mr. Wecker's issue as to whether the preamble is limiting. We say it is not. And in that analysis, the board goes through great lengths to show all the points in the specification where there is, in fact, no support for the connecting to be triggered by the imminent execution of a file. In particular, the language of the claims itself, both the body and the preamble, the real-time limitation only applies in the blocking step. Figures 2A and 2B describe both embodiments. Figure 2A is the single-server embodiment. Figure 2B is the two-server embodiment. In both of those, only the blocking step is performed in real time. As Judge Chen mentioned at column five, they explain the only explanation of how the connecting step is accomplished is it is triggered by a user either typing in the URL for the harmful information server or clicking on a link to that. Typing and clicking are manual acts. They are not real-time acts. But do you agree that not all the claims or the claim amendments are the same? I mean, they made the argument that, yes, some of the claim amendments would put in blocking for other steps, but that at least, as I understood, your friend on the other side, to say that 40 and 42 were different. Do you agree with that? I would agree that 40 and 42 were different. My remarks up to this point relate only to substitute claims 36 and 44, which try to add the in real time as a file is executed limitation to the connection steps. 36 and 34 add that the... So then tell me about 40 and 42. So they would require the client to connect to the first web server according to information from the second web server about the file to be executed. And this is also not supported in the specification. The patent teaches for the two-server embodiment that the second web server provides, and this is a quote, hyperlink information for use in accessing the harmful information management server as well as information relating to online services to the client. And that is at appendix 64, which is the 196 patent, column 6, lines 6 to 15. So what that says, it's either hyperlink information, which has nothing to do with... It's not information about the file to be executed,  but again, the plain language of that reference to the specification says nothing about information about the file to be executed. And the entire structure of the claims and the invention undercuts Cap's argument completely, because the only thing that gleans any information about the file to be executed is the blocking module. And that is not even operative in either the method or system claims at this point in the claims. That does not come into play until after the connecting step and the transmission step. It occurs, then it is actually automatically executed on the client, and then it only begins inspecting files either through inspecting file input output or network packet IO. But there is no information known about the file to be executed at the time of the connection step in either the single-server or dual-server embodiment. So, and with respect to that, that limitation, the court goes through, the board sort of incorporates a previous analysis and its opinion for that issue. So the board addressed, it was in the context of claim construction, and the board explained why the specification did not support construing according to information provided from a second web server as being information from a second web server about the file to be executed. And that discussion is at the board's appendix 21 through 22. So the discussion there, and it is based on substantial evidence with sites to the words of the patent and the declaration of Dr. Prakash, so it is grounded in substantial evidence. But it is in the context of claim construction, but it is the same exact language that is in the proposed claim amendment. So the board did not repeat its earlier analysis in the opinion, it just incorporated it. So, and as far as the references that cap, I don't know that I've got a complete description, but there is a lot of reliance on this term that it's an online service to the client. The patent makes clear that the online service is the provision of the blocking module over a network, which is online. And the quote for that would be the 196 patent appendix 63 at 449 lines 49 to 51. So it says, the harmful information management server provides an online service for providing a harmful information blocking code module, which is capable of blocking real-time harmful information. So the online service is simply the provision of the blocking module over the network. There is also blocking of online threats, and that comes into play with respect to claim 4, and the claims devoted to inspecting network packet IO, blocking access to harmful lascivious websites, and so forth. So, unless the board has questions. Thank you, Mr. Valentine. Mr. Wecker has five minutes to rebuttal. Five minutes. So I'd like to address the issue of why the claim amendments were made that affected the preamble. The concept that steps A and B would be modified by the words real-time, that's exactly what the patent owner, the applicant was trying to do when they amended the preamble. You were trying to overcome specific prior art, right? What CHEN was, was a system that was online in the sense that Mr. Valentine just suggested, which was you can have a server and a client interacting to help virus detection and treatment, and that was what CHEN was. But what CHEN did was it had this server that would interactively communicate with the client over a lengthy period of time to identify... So blocking in real-time would overcome that prior art without having to have the real-time apply to the other aspects. Understand that the claim as it was written at the time of this rejection for CHEN already had subpart C that talked about real-time blocking of harmful information. So the examiner maybe didn't realize that CHEN didn't have any blocking involved necessarily. It was talking about treating viruses that were already in the client computer, but it absolutely had no sense of preventing a defense against online threats. In CHEN, it was a non-real-time system. You had this interaction that essentially you can watch your computer do a virus scan, particularly at the time of these inventions, that would take hours and hours to go through all the files on your hard drive. Well, CHEN was a process in which you'd offload a bunch of that effort to a server, and it would interactively help the client. So the applicant here was plainly distinguishing CHEN on the basis that it wasn't a real-time system and that it didn't focus on files to be executed. The focus on a file to be executed is also, understand, a temporal component. This preamble has two temporal components to it. It's about a real-time method and blocking a file to be executed, which the parties have agreed means a file about to be executed. So the file-to-be-executed language fully incorporates the fact that this is a real-time blocking of files on the client computer. The real-time method part of the preamble is focused on the fact that the other two elements have to also occur in real-time. That's what it means when it's a real-time method comprising these three steps, is that you call it eventually a blocking of the file because that's the end result. But in this patent, it has three steps that lead to that end result. So one place in the specification that it's absolutely clear that this was the problem they were addressing, not CHEN and viruses already in computers, says the present invention can prevent user computers operating in an open network environment from damage caused by harmful information. This is the hacking prevention point I was making before. Again, looking right at the file history where they're distinguishing CHEN, the applicant said, in contrast to CHEN, the presently claimed invention blocks harmful information in a file-to-be-executed in real-time on a computer network. This last phrase of in real-time on a computer network would not be necessary because the phrase blocks harmful information in a file-to-be-executed already says that. Isn't the file-to-be-executed language what the point of the amendment was in the prosecution history? In other words, the whole point was that CHEN scanned all files and that the present invention scanned a particular file-to-be-executed. Right. And the reason that they focused on that file-to-be-executed is to scan all files took too long. That didn't serve the purpose of this invention, which was to protect an open network. You needed to focus on the particular threat. That was the file-to-be-executed, and you needed to be fast in focusing on it. So you have this connection request, a response, and then it's decided whether that file is harmful. Thank you, counsel. Your time has expired. We will take the case under advisement. Thank you.